UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
NIGEL JOHN,

                    Plaintiff,

             -against-

MELISSA AVILES-RAMOS individually and as
Chancellor of the Department of Education
of the City of New York,  KETLER LOUSSAINT
 individually and as Superintendent of the Department
of Education, of the City of New York, ROBERT LOPEZ,
individually and as Principal of the Department of
Education of the City of New York, LOTTRELL GRANGER,
individually and as Assistant Principal of the Department
of Education of the City of New York, LATOYA STROUTE,
individually and on behalf the Department of Education of
the City of New York, and DELYS SMITH individually and
on behalf the Department of Education of the City of New York,

                    Defendants.
-----------------------------------------------------X

**24-cv-08092 (NRM) (VMS)**

**SECOND**
**AMENDED COMPLAINT**

*Jury Trial Demanded*

        Plaintiff Nigel John ("Plaintiff") by and through his undersigned attorney, Stewart Lee

Karlin, Stewart Lee Karlin Law Group, P.C. sues the Defendants MELISSA AVILES-RAMOS

individually and as  Chancellor of the Department of Education of the City of New York,

KETLER LOUSSAINT  individually and as Superintendent of the Department of Education, of

the City of New York, ROBERT LOPEZ, individually and as Principal of the Department of

Education of the City of New York, LOTTRELL GRANGER, individually and as Assistant

Principal of the Department of Education of the City of New York, LATOYA STROUTE,

individually and on behalf the Department of Education of the City of New York, and DELYS

SMITH individually and on behalf the Department of Education of the City of New York,

 and alleges as follows:

1

## PRELIMINARY STATEMENT

1.    This is a civil action seeking injunctive relief and monetary relief, including past and ongoing economic loss, compensatory and other damages for failing to accommodate Plaintiff's religious practice, and terminating Plaintiff due to his religion and other claims pursuant to 42 U.S.C. 1983.

## JURISDICTION AND VENUE

2.    Jurisdiction is invoked pursuant to 28 U.S.C. § 1331, and Defendants resides within the District.

## THE PARTIES

3.    At all times hereinafter mentioned, Plaintiff Nigel John (hereinafter mentioned as "Plaintiff or "Mr. John") resides within the State of New York. Plaintiff was employed by the DOE at all times relevant as set forth in the Complaint.

4.    Defendant Chancellor MELISSA AVILES-RAMOS was acting individually and as Chancellor of the Department of Education of the City of New York,   KETLER LOUSSAINT was acting  individually and as Superintendent of the Department of Education, of the City of New York, ROBERT LOPEZ, was acting individually and as Principal of the Department of Education of the City of New York, LOTTRELL GRANGER,  was acting individually and as Assistant Principal of the Department of Education of the City of New York, LATOYA STROUTE, individually and on behalf the Department of Education of the City of New York,  and DELYS SMITH individually and on behalf the Department of Education of the City of New York, and acted  individually and in her official capacity of Chancellor at all times relevant to the complaint.

## FACTUAL STATEMENT

5.      Plaintiff was employed for one year as a Substitute Science Education teacher with the DOE, teaching environmental science and earth science to middle school and high school Regents students.

6.      Thereafter, Plaintiff was employed for one year as a Substitute STEM/Computer Science teacher teaching STEM and Computer Science to High School and Middle School Students.

7.      Thereafter, Plaintiff worked as a substitute teacher for one year and then was hired to teach Special Education teacher teaching ELA, Math, Science, and Social Studies at the High School in September 2021 at P 256Q located at 100-00 Beach Channel Drive Rockaway, New York 11694.

8.      Plaintiff was also in the NYC Teaching Fellows Program from February 2021 to August 2023.

9.      On or about July 27, 2022, Plaintiff was discontinued from his teaching position by the City of New York City Department of Education.

10.     Plaintiff was in the Fellows Graduate Special Education Program at Pace University, and many of the professors have praised Plaintiff's teaching and work.

11.     Plaintiff had a GPA of 4.0   and graduated in 2022 with a Master's in Education

12.     Plaintiff also had a 3.5 undergraduate GPA.

13.     However, Plaintiff was subjected to disparate treatment and discontinued due to his religion (Jehovah's Witness) for the reasons as set forth below.

14.     At the beginning of the 2021-2022 school year, Plaintiff was assigned an 8:1:1 class. The class size is indicative of students that are considered significantly disabled.

15.     Plaintiff had two paraprofessionals Defendants Latoya Stroute and Delys Smith, assigned to the class. However, one paraprofessional was a 1:1 for a child in a wheelchair. The Plaintiff

informed both of them that he was a Jehovah's Witness and thus does not celebrate holidays and birthdays.

16.     Defendant Smith (paraprofessional) responded to Plaintiff said that is where we have all the joy in school, and you are taking our joy away. Plaintiff responded that you could celebrate it in the classroom.  Plaintiff further stated that he would be there but just would not participate.

17.     The paraprofessionals Defendants Latoya Stroute and Delys Smith expressed very negative views of regarding Plaintiff's  religion.

18.      After advising the of the Plaintiff's religion, there was a markedly dramatic change in Defendants Latoya Stroute and Delys Smith's attitude.   Defendants Latoya Stroute and Delys Smith kept fighting Plaintiff on everything he asked them to do, making the classroom environment very difficult for him to teach, especially given the severity of the students' disabilities.

19.     Plaintiff's job responsibilities were made significantly more difficult due to Defendants Latoya Stroute and Delys Smiths' bias against Plaintiff. For example, they refused to sort classwork for them, and Ms. Smith kept throwing out material and ignoring Plaintiff's requests to stop doing that and assist with classwork. Frequently, assistance that the Plaintiff requested was ignored.

20.     In fact, the Plaintiff met several times with the union rep, who said the Plaintiff should treat them as fellow teachers, and no one is in charge, which added to the confusion and chaos.

21.     The Plaintiff had put up a sign reading, "God is love," and he was told to take it down, which he did immediately.

22.     The Plaintiff was subjected to disparate treatment due to his religion. For example, he was subjected to microscopic scrutiny, such as the Defendant Assistant Principal Lottrell Granger

constantly walking into his classroom unannounced. This differed from similarly situated probationary teachers that Plaintiff talked to who were not Jehovah's Witnesses, such as Mr. John Georges.

23.     If something were out of place, Defendant Principal Lopez would say he was doing an unannounced observation if he spotted something; however, if everything was going well, he would not conduct an observation. This was part of the religious prejudice because other teachers, not his religion, were not subjected to this kind of treatment to wit:

24.     It should be noted that the Plaintiff's Mentor/Coach went out on maternity leave in November 2021, and he was never assigned a replacement coach for the remainder of the school year (over six months).

25.     A mentor is a critical supportive resource for a first-year probationary teacher, particularly a special education teacher assigned to 8:1:1 classroom.

26.     In addition, not having the required mentor plainly violates the Collective Bargaining Agreement and New York State Education Law 3033 and

27.     Even in October and November, when the Plaintiff and his mentor met, they met very briefly once or twice a week, which is contrary to practice and policy, which mandates at least two hours a week.

28.     The Plaintiff complained on several ocassions about not having a mentor to the Defendant Principal Lopez and was assured someone would be assigned to him, but that never happened.

29.     Plaintiff did not get any formal observations, just informal observations, but the observations were biased because the Defendant Principal, Lopez, who was the evaluator, would come into the room, and if it looked like it was going okay, he would not write it up and walk out. He only wrote it up as an observation when she walked in, and it was what she wanted to write up.

30.     Plaintiff's attendance was excellent.

31.     Plaintiff was diligent in completing all his IEPs as soon as the School Psychologist opened them, completing them swiftly and diligently.

32.     Ms. Ambrosini, the school IEP specialist, praised the Plaintiff several times for his attention to detail in the IEPs.

33.     Mr. John Georges (teacher) said the administration was targeting the Plaintiff and trying to keep a low profile.

34.     There were birthday parties in Plaintiff's classroom, but but the Defendants Latoya Stroute and Delys Smith still tried to get Plaintiff engaged or involved in the celebration.

35.     For the Christmas party, Plaintiff was told by Ms. Granger that he would have to bring the kids to the room for the party and was told there were no exceptions.

36.     At the birthday parties, Plaintiff asked Defendant Granger to be excused and was told okay, but no one ever came to relieve him, so he could not leave the room while parties went on and had to sing happy birthday

37.     Defendant Stroute one of the paraprofessionals in the room, would dress very sexually and very provocatively, and one of the teachers mentioned she was testing Plaintiff's Christian faith.

38.     If Plaintiff asked Defendant Stroute and Smith in the room to do anything, they would say do it yourself, very disrespectfully.

39.     Plaintiff also complained to the Defendant Principal Lopez on several occasions about the lack of support from the paraprofessionals  and bias against him but his complaints fell on deaf ears.

40.     The Plaintiff was isolated and was perceived as different due to his religion.

41. Around March-April, the Plaintiff was called into a meeting with the Defendants Principal Lopez, and Assistant Principal Granger, and Union Rep, Mr. Hans, and was told they were dissatisfied with the Plaintiff and were rescinding their approval of the Plaintiff at their school.

42. Plaintiff asked for the reasons, and Defendant Principal Lopez stated, "I don't fit into the school aura or something to that effect." Plaintiff was further advised that he should consider leaving when open season occurs or to leave.

43. Plaintiff was also placed on the 'Problem Code' at the Human Resources Office of Personnel Investigations. This means that Defendants placed his fingerprints in a database at the Office of Personnel Investigations. The 'Problem Code' is used for employees who have committed what the New York City Department of Education considers misconduct or incompetence.

44. Plaintiff remains coded because of his sincerely held religious beliefs and directly impacts his employability in New York City and the surrounding suburbs.

45. Thereafter, Defendant Principal Lopez recommended Plaintiff's termination to Defendant Superintendent Ketler Loussaint.

46. Thereafter, Plaintiff was discontinued on July 22, 2022, due to his religion by to Defendant Superintendent Ketler Loussaint. The Defendant Chancellor Melissa Aviles-Ramos or the Chancellor's designee makes the final decision regarding Plaintiff's discontinuance and is responsible for the conduct set forth in this complaint.

47. It should be noted that Plaintiff was hired to a four-year probation period. He was discontinued after only one year and without a mentor which is required under New York State Education law for a first-year probationary teacher.

48. Plaintiff suffered adverse employment action, namely, being discontinued.

49.     Clearly, Plaintiff's religion was the substantial and motivating factor in the adverse employment action which was taken against Plaintiff.

50.     Plaintiff had a cognizable property interest in his employment, which the defendants violated.

51.     Plaintiff remains coded for incompetency because of his sincerely held religious beliefs.

52.     As a result of the defendant's actions and in actions as set forth above, plaintiff has been, and continues to be, deprived of his Federal rights under 42 U.S.C., Section 1983 and the fourteenth amendment due process rights applying the first amendment rights of the U.S. Constitution.

53.     As a result of defendant's actions, plaintiff suffered and was damaged.

54.     Defendant has deprived plaintiff of such rights under color of State Law.

55.     By reason of the foregoing, Defendant unlawfully discriminated against Plaintiff regarding the terms, conditions and privileges of Plaintiff's employment, in that Defendants by not allowing his to practice his religion and causing his termination.

56.     As a result of Defendant's actions, Plaintiff suffered and was damaged.

**PLAINTIFF HEREIN DEMANDS A TRIAL BY JURY**

**WHEREFORE,** Plaintiff demands judgment against Defendants for all compensatory, emotional, psychological, and punitive damages and any other damages permitted by law pursuant to the above-referenced causes of action. It is respectfully requested that this Court grant Plaintiff any other relief to which she is entitled, including but not limited to:

1.     Reinstating Plaintiff to his former position and salary retroactively with seniority and benefits;

2. Awarding Plaintiff all the backpay and financial damages that ensued after she was placed on a lawless and unconstitutional Leave Without Pay and having assigned a problem code;

3. Compensatory damages for past and future economic;

4. An Award of reasonable Attorney fees and litigation costs;

5. Granting such other and further relief that the Court deems just and proper.

Dated: New York, New York
May 27, 2025

STEWART LEE KARLIN
LAW GROUP, P.C.

Stewart Lee Karlin, Esq.
111 John Street, 22nd Floor
New York, NY 10038
(212) 792-9670
slk@stewartkarlin.com