UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NIGEL JOHN,

Plaintiff,

v.

MELISSA AVILES-RAMOS individually and as Chancellor of the Department of Education of the City of New York, KETLER LOUSSAINT individually and as Superintendent of the Department of Education of the City of New York, ROBERT LOPEZ, individually and as Principal of the Department of Education of the City of New York, LOTTRELL GRANGER, individually and as Assistant Principal of the Department of Education of the City of New York, LATOYA STROUTE, individually and on behalf of the Department of Education of the City of New York, and DELYS SMITH, individually and on behalf of the Department of Education of the City of New York,

Defendants.

MEMORANDUM & ORDER
24-CV-08092 (NRM)

NINA R. MORRISON, United States District Judge:

Plaintiff Nigel John, a former teacher with the New York City Department of Education ("DOE"), brings this action under 42 U.S.C. § 1983 against his former colleagues and supervisors Melissa Aviles-Ramos, Ketler Loussaint, Robert Lopez, Lottrell Granger, Latoya Stroute, and Delys Smith ("Defendants"). Plaintiff alleges that while he was assigned to a DOE school as a special education teacher, Defendants discriminated against him on the basis of his religion, and that

Defendants placed a substantial burden on his right to freely exercise his religion.

Presently before the Court is Defendants' motion to dismiss. For the reasons that follow, Defendants' motion is granted.

**BACKGROUND**

The following facts are drawn from the Second Amended Complaint ("Complaint"), Second Am. Compl. ("Compl."), ECF No. 16, and are taken as true for the purpose of the instant motion. *See Dorking Genetics v. United States*, 76 F.3d 1261, 1263 (2d Cir. 1996). Plaintiff Nigel John is a Jehovah's Witness. Compl. ¶ 15. He was employed by the DOE as a substitute science education teacher for one year, after which he was employed as a substitute "STEM" and computer science teacher. *Id.* ¶¶ 5–6. After holding the two substitute teacher roles, John commenced employment as a special education teacher in September 2021. *Id.* ¶ 7. In addition, he was enrolled in the New York City Teaching Fellow Program from February 2021 to August 2023. *Id.* ¶ 8. On or about July 27, 2022, John was terminated from his position by the DOE. *Id.* ¶ 9.

John alleges that as a special education teacher, he was subject to discriminatory treatment on the basis of his religion and ultimately terminated as a result. *Id.* ¶¶ 7, 55. First, during the 2021–2022 school year, John's assigned paraprofessionals, Defendants Latoya Stroute and Delys Smith, "expressed very negative views [] regarding [his] religion" and made his responsibilities more difficult as a result. *Id.* ¶¶ 15–19. For example, Stroute and Smith "kept fighting [John] on everything he asked them to do," "refused to sort classwork for [him]," and "kept

throwing out material and ignoring [John's] requests to stop doing that and assist with classwork." *Id.* ¶¶ 18–19.

John further alleges disparate treatment by other school officials. For example, he was subject to "microscopic scrutiny" by Defendant Lottrell Granger, the school's assistant principal, who consistently walked into John's classroom unannounced. *Id.* ¶ 22. Defendant Robert Lopez, the school's principal, similarly made unannounced visits to observe John's classroom, and would selectively "write it up" if what she observed "was what she wanted to write up." *Id.* ¶¶ 23, 29. John claims that other teachers who were not Jehovah's Witnesses were not subject to similar treatment. *Id.* ¶¶ 22–23. John also states that his assigned mentor/coach went on maternity leave in November 2021, and that he was never assigned a replacement for the remaining six months of the year. *Id.* ¶ 24.

John also describes several specific incidents of misconduct. First, John asked Granger to be excused from birthday parties in his classroom. *Id.* ¶ 36. He was "told okay, but no one ever came to relieve him, so he could not leave the room while parties went on and had to sing happy birthday." *Id.* For a school Christmas party, John "was told by [Granger] that he would have to bring the kids to the room for the party and was told there were no exceptions." *Id.* ¶ 35. Finally, John put up a sign in his classroom reading "God is love," but was told to take it down. *Id.* ¶ 21.

Around March or April of 2022, John met with Lopez and Granger, who told John that he "d[idn't] fit into the school aura or something to that effect," and that "they were dissatisfied with [John] and were rescinding their approval of [John] at

their school." *Id.* ¶¶ 41–42. Lopez then recommended John's termination to Defendant Superintendent Ketler Louissant, who then terminated John from his position on July 22, 2022. *Id.* ¶¶ 45–46. Defendant Melissa Aviles-Ramos, the school's chancellor, made the final decision regarding termination. *Id.* ¶ 46.

John filed this action on January 9, 2025. ECF No. 1. On May 26, 2025, John filed his operative, second amended complaint. Compl. Defendants filed the instant motion on December 15, 2025. Mot. to Dismiss ("Mot."), ECF No. 39.

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Mason v. Bd. Of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Though a court must accept a plaintiff's well-pleaded factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient to state a claim. *Iqbal*, 556 U.S. at 678.

### I. Disparate Treatment and Failure to Accommodate

Plaintiff brings two claims alleging that Defendants violated his constitutional right to be free from discrimination based on his religious beliefs under 42 U.S.C. § 1983: disparate treatment and failure to accommodate.

As an initial matter, Defendants argue that Plaintiff's claims should be dismissed because they sound in causes of action under Title VII, and Plaintiff failed to allege a Title VII claim. Indeed, it is well established that "[a] plaintiff cannot use Section 1983 to gain perceived advantages not available to a Title VII claimant." *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993). Because § 1983 "is not itself a source of substantive rights," *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979), an action under this section cannot "be brought to vindicate rights conferred only by a statute that contains its own structure for private enforcement, such as Title VII," *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).

However, it is similarly well established that the Constitution's Equal Protection Clause independently recognizes claims of religious discrimination. *See Morris Cnty. Bd. of Chosen Freeholders v. Freedom From Religion Found.*, 586 U.S. 1213, 1214 (2019) ("[G]overnmental discrimination against religion—in particular, discrimination against religious persons, religious organizations, and religious speech—violates . . . the Equal Protection Clause."); *see, e.g.*, *Parrino v. Dep't of Educ. of N.Y.*, No. 24-CV-8892 (AMD) (JRC), 2026 WL 407507, at *4 (E.D.N.Y. Feb. 13, 2026) (analyzing claims for disparate treatment and failure to accommodate under § 1983). Plaintiff therefore "may bring suit under § 1983 alone, and is not required to plead concurrently a violation of Title VII." *Annis v. Cnty. of Westchester*, 36 F.3d 251, 255 (2d Cir. 1994); *see also Saulpaugh*, 4 F.3d at 143 ("[A] plaintiff can assert a claim under Section 1983 if some law other than Title VII is the source of the right alleged to have been denied.").

"[E]qual protection claims of discrimination are analyzed pursuant to the same standards as Title VII discrimination claims; with the exception that Section 1983 permits claims against individuals, 'the elements of the substantive cause of action are the same under both statutes.'" *Langlois v. Hartford Bd. of Educ.*, No. 16-CV-1746 (WWE), 2019 WL 13271842, at *12 (D. Conn. Aug. 5, 2019) (quoting *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2006)), *aff'd*, 831 F. App'x 548 (2d Cir. 2020). Under these standards, Plaintiff fails to plausibly allege a claim of religious discrimination.

**A. Disparate Treatment**

To raise a claim of disparate treatment, a complaint must show that plaintiff "(1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023) (citation modified) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). The first two prongs are not in dispute.

The Court first notes that most of the conduct Plaintiff cites as evidence of the discrimination he suffered in the workplace does not rise to the level of an "adverse employment action." An adverse employment action is a "materially adverse change in the terms and conditions of employment." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citation modified). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished

material responsibilities, or other indices unique to a particular situation." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)). Notably, it is well established that neither heightened scrutiny nor verbal abuse constitutes an adverse action under this standard. *See Hill v. Rayboy-Braustein*, 467 F. Supp. 2d 336, 355 (S.D.N.Y. 2006) ("Excessive scrutiny, without more, does not constitute an adverse employment action."); *id.* (collecting cases); *Nahar v. ADR Ventures WPR LLC*, No. 23-CV-3835 (VSB), 2024 WL 4042433, at *4 (S.D.N.Y. Sep. 3, 2024) ("[V]erbal abuse is typically insufficient to constitute an 'adverse employment action' because 'negative or otherwise insulting statements are hardly even actions,' let alone 'adverse actions.'" (quoting *Scott v. City of N.Y. Dep't of Corr.*, 641 F. Supp. 2d 211, 231 (S.D.N.Y. 2009))).

Plaintiff's termination, of course, constitutes an adverse employment action. However, the Complaint fails to allege the requisite inference of discriminatory intent. First, Plaintiff nowhere claims that Defendants Lopez, Loussaint, or Aviles-Ramos — the individuals responsible for his termination — knew that he was a Jehovah's Witness. "Plaintiff's failure to plead that [Defendants] knew of his religious affiliation defeats any inference of discriminatory intent." *Muslim v. Sagamore Child.'s Psychiatric Ctr.*, No. 22-CV-07850 (JMA) (ARL), 2024 WL 3431959, at *4 (E.D.N..Y. July 15, 2024).

More fundamentally, even if the Court were to liberally construe other allegations in the Complaint to allege that the three Defendants actually responsible for Plaintiff's termination personally knew that he was a Jehovah's Witness (such as

the Complaint's assertion that some of the paraprofessionals at the school had "expressed very negative views [] regarding [Plaintiff's] religion," Compl. ¶ 17), he still fails to state a claim for relief. This is because the Complaint fails to allege "facts that indirectly show discrimination by giving rise to a plausible inference of discrimination" as is required at the pleading stage. *Vega*, 801 F.3d at 87.

The Complaint merely asserts that Plaintiff's termination was "due to his religion" or that Plaintiff's religion was "the substantial and motivating factor." Compl. ¶¶ 40, 49. However, "[i]n pleading intentional discrimination, a plaintiff 'must do more than recite conclusory assertions,' but rather 'must specifically allege . . . [facts and] circumstances giving rise to a plausible inference of [] discriminatory intent.'" *Moore v. KTR Dev. LLC*, No. 09-CV-2925 (RJD) (RER), 2011 WL 572362, at *2 (E.D.N.Y. Feb. 16, 2011) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713–14 (2d Cir. 1994)). While Plaintiff does allege that Defendant Lopez stated that he "d[idn't] fit into the school aura," Compl. ¶ 42, "[i]solated and ambiguous statements are too abstract . . . to support a finding of [] discrimination" — particularly in light of the fact that the Complaint does not allege that Lopez himself was aware of Plaintiff's religious affiliation. *Spence v. Maryland Cas. Co.*, 803 F. Supp. 649, 668 (W.D.N.Y. 1992), *aff'd*, 995 F.2d 1147 (2d Cir.1993); *see also Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) ("Stray remarks, even if made by a decision maker, do not constitute sufficient evidence [to sustain] a case of employment discrimination.").

Finally, Plaintiff also fails to establish that any treatment he received differed from that that of "individuals 'similarly situated in all material respects.'" *Jean v.*

*Acme Bus Corp.*, No. 08-CV-4885 (ARL), 2012 WL 4171226, at *9 (E.D.N.Y. Sep. 19, 2012) (quoting *Shumway v. United Parcel Serv. Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)). "An employee is similarly situated . . . if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493–94 (2d Cir. 2010) (citation modified).

The Complaint mentions potential comparators only in describing Defendants Granger's and Lopez's heightened scrutiny with respect to Plaintiff's management of his classroom. Plaintiff alleges that "similarly situated probationary teachers that Plaintiff talked to who were not Jehovah's Witnesses, such as Mr. John Georges," were not subject to the same scrutiny. Compl. ¶ 22; *see id.* ¶ 23 ("This was part of the religious prejudice because other teachers, not his religion, were not subjected to this kind of treatment . . . ."). However, Plaintiff alleges no other facts to support his assertion that these other teachers were "similarly situated." That is particularly significant here, given that the Complaint concedes that Defendants sometimes observed "something [] out of place" in Plaintiff's classroom. Compl. ¶ 23. Because Plaintiff does not claim that the other teachers were ever "engaged in comparable conduct," he has not established that they were similarly situated in all material respects. *Ruiz*, 609 F.3d at 494; *see Dechbery v. City of New York*, No. 14-CV-2130 (KAM) (SMG), 2017 WL 11683338, at *7 (E.D.N.Y. Mar. 31, 2017) ("[Plaintiff] must plead allegations from which the court can conclude it is plausible that the [individuals] to whom []he compares [him]self were similarly situated and subject to the same workplace standards.").

### B. Failure to Accommodate

Plaintiff similarly fails to raise a claim for failure to accommodate. To state a religious discrimination claim for failure to accommodate, "Plaintiff must show that (1) he held a 'bona fide religious belief conflicting with an employment requirement'; (2) he informed his employer of this belief; and (3) he was 'disciplined for failure to comply with the conflicting employment requirement.'" *Vasquez v. City of New York – Off. of Mayor*, No. 22-CV-05068 (HG) (VMS), 2024 WL 1348702, at *5 (E.D.N.Y. Mar. 30, 2024) (quoting *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001)), *reconsideration denied*, No. 22-CV-05068 (HG), 2024 WL 1886656 (E.D.N.Y. Apr. 30, 2024). As already discussed, Plaintiff fails to allege that he informed his employers of his religious affiliation. And in any case, the Complaint nowhere indicates that Plaintiff was unable to comply with any requirement of employment as a result of the purported lack of accommodations, let alone that such failure was linked to his ultimate termination.

## II. Free Exercise

Finally, Plaintiff asserts a claim under the First Amendment's Free Exercise Clause. This claim is based on three alleged instances of misconduct. First, that he was forced to sing "happy birthday" during school birthday celebrations; second, that he was required to bring his students to a school Christmas party; and third, that he was asked to take down a "God is love" sign. Compl. ¶¶ 21, 34–36. Plaintiff fails to demonstrate that Defendants imposed any policy targeting his religion, and none of the alleged incidents of misconduct rises to the level of a violation of his right to free

exercise of his religion.

To succeed on a free exercise claim, a plaintiff carries the burden of proving that a government entity has (1) "burdened his sincere religious practice pursuant to a policy that is (2) not 'neutral' or 'generally applicable.'" *Kravitz v. Purcell*, 87 F.4th 111, 127 (2d Cir. 2023) (citation modified) (quoting *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421–22 (2022)).

As an initial matter, Plaintiff has not shown that the alleged incidents of misconduct resulted from non-neutral policies. A law or policy is generally considered neutral "unless it is specifically directed at [a] religious practice." *G.E. v. City of New York*, No. 12-CV-5967 (RRM) (SLT), 2017 WL 4357340, at *5 (E.D.N.Y. Sep. 29, 2017) (citation omitted). The Complaint does not allege any facts suggesting that the school's policies surrounding the birthday parties, the Christmas celebration, or the affixing of religious signs were created specifically to target Jehovah's Witnesses.

In any event, Plaintiff fails to demonstrate that the incidents he describes substantially burdened his freedom to exercise his religious beliefs. The determinative question in assessing whether an action imposes a substantial burden "is whether participation in the [event] . . . is considered central or important to [the plaintiff's] practice of [his religion]." *Ford v. McGinnis*, 352 F.3d 582, 593–94 (2d Cir. 2003). "A burden on religious exercise is not substantial when it 'comfortably could be said that a belief or practice is so peripheral to the plaintiff's religion that any burden can be aptly characterized as constitutionally de minimis.'" *Wiggins v. Griffin*, 86 F.4th 987, 993 (2d Cir. 2023) (quoting *Ford*, 352 F.3d at 593). For a state

to compel participation against a claim that such participation interferes with a religious practice, "it must appear either that the State does not deny the free exercise of religious belief by *requirement*, or that there is a state interest of sufficient magnitude to override the interest claiming protection under the Free Exercise Clause." *Wisconsin v. Yoder*, 406 U.S. 205, 214 (1972) (emphasis added).

Plaintiff alleges that he asked — and was granted permission — to be excused from his classroom during birthday celebrations, but that "no one ever came to relieve him, so he could not leave the room while parties went on and had to sing happy birthday." Compl. ¶¶ 34, 36. First, given that Plaintiff was in fact given permission to be excused from the celebration, his allegations do not support a finding that he was genuinely compelled to sing "happy birthday." His pleadings are instead the sort of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," that are insufficient to plausibly allege a free exercise claim. *Iqbal*, 556 U.S. at 678; *see also Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 80 (2d Cir. 2001) ("The mere evidence that plaintiffs found that remark and perhaps some other aspects of the ceremonies offensive to their beliefs, however, did not suffice to prove a free exercise violation, for the court made no finding that students were required to participate in the Earth Day ceremonies.").

Furthermore, even being required to sing "happy birthday" would not constitute a substantial burden barred by the Free Exercise Clause. In *Skoros v. City of New York*, 437 F.3d 1 (2d Cir. 2006), for example, the Second Circuit considered whether a school had violated a young child's right to free exercise when he was given

a Chanukah coloring book including a cover design of a menorah. *Id.* at 39–40. The court found no support for the conclusion that the child was ever required to actually color in the book. *Id.* at 40. Regardless, the Second Circuit held that even if the coloring book *was* a required assignment, "there is no basis for [the plaintiff's] claim that defendants' actions encouraged [the child] to renounce Christianity." *Id.* at 40. The school's actions did not deny the free exercise of religious belief — either by requirement or otherwise — and did not pose the sort of substantial burden that is contemplated by the Free Exercise Clause. *Id.* So too here. Though Plaintiff does not celebrate birthdays due to his religious beliefs, Compl. ¶ 15, there is no basis for his claims that being instructed to sing "happy birthday" at a student's birthday celebration, *id.* ¶ 36, would meaningfully burden his ability to practice as a Jehovah's Witness.

Plaintiff next alleges that Granger informed him "that he would have to bring the kids to the room" for a Christmas party, and that he "was told there were no exceptions." Compl. ¶ 35. For the reasons stated above, a requirement to merely escort students to a school Christmas party — but without requiring him to actually participate in the celebrations at that party — is not a substantial burden protected by the Free Exercise Clause. *See, e.g.*, *Altman*, 245 F.3d at 80. And Plaintiff does not make allegations suggesting that he was compelled to participate in such a celebration. More than mere exposure to activity offensive to one's religion is needed to establish such a burden. For example, in *Smith by Smith v. Bd. of Educ., N. Babylon Union Free Sch. Dist.*, 844 F.2d 90 (2d Cir. 1988), the Second Circuit found

that a graduation ceremony scheduled for a Saturday did not pose an unconstitutional burden on the plaintiff's First Amendment right to freely exercise his Orthodox Jewish religious beliefs. *Id.* at 91, 94. Instead, the court held that such policies may "simply make[] the practice of . . . religion more difficult than the practice of other religions but . . . [are] not the type of burden on core religious freedom rising to the level of a violation of the free exercise clause." *Id.* at 94. Similarly, here, mere exposure to a celebration that was contrary to Plaintiff's religious views does not constitute the sort of burden on religion protected by the Free Exercise Clause.

Finally, Plaintiff claims that he was told to take down a sign he had "put up" reading "God is love." Compl. ¶ 21. However, it is well established that "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 647–48 (1981). Indeed, exercises of religion protected by the First Amendment "are subject to reasonable time, place, and manner restrictions." *Id.* at 647; *see also Grayned v. City of Rockford*, 408 U.S. 104, 115 (1972) (finding that "reasonable 'time, place and manner' regulations may be necessary to further significant governmental interests, and are permitted"). Particularly given that Plaintiff does not allege any specific facts suggesting that displaying a "God is love" sign was crucial to his practice of religion, the school's general restriction against displaying symbols and texts does not amount to a burden on Plaintiff's free exercise. *See Panayoty v. Annucci*, 898 F. Supp. 2d 469, 483 (N.D.N.Y. 2012) ("[T]he

restriction against displaying symbols and texts do not, themselves, burden the free exercise of religion.”).

Plaintiff thus fails to adequately state a claim under either the Equal Protection Clause or the Free Exercise Clause.

## CONCLUSION

For the foregoing reasons, Defendant’s motion to dismiss is GRANTED.

**SO ORDERED.**

*/s/ Nina R. Morrison*
NINA R. MORRISON
United States District Judge

Dated: August 27, 2026
Brooklyn, New York